**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

|  |  |
|---|---|
| ) | Case No. <u>6:25-cv-506</u> |
| ) | |
| THUAN DU ) | |
| ) | |
| and ) | |
| ) | |
| DONNYFL, LLC ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| PAM BONDI, ) | |
| IN HER OFFICIAL CAPACITY AS ) | |
| ATTORNEY GENERAL ) | |
| OF THE UNITED STATES, ) | |
| U. S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| KASH PATEL, ) | |
| IN HIS OFFICIAL CAPACITY AS ) | |
| ACTING DIRECTOR OF THE ) | |
| BUREAU OF ALCOHOL, TOBACCO, ) | |
| FIREARMS AND EXPLOSIVES, ) | |
| ) | |
| and ) | |
| ) | |
| BUREAU OF ALCOHOL, TOBACCO, ) | |
| FIREARMS AND EXPLOSIVES, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Thuan Du and DonnyFL, LLC ("plaintiffs") bring this action against Ms. Pam

Bondi, in her official capacity as Attorney General of the United States, the U.S. Department of Justice,

Mr. Kash Patel, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms

and Explosives, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives under the

Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq*. and the Declaratory Judgement Act, 28

U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to end Defendants' arbitrary, capricious, and otherwise unlawful efforts to misclassify DonnyFL airgun moderators as "firearms" or "silencers" under the National Firearms Act of 1934 ("NFA").

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331. This Court has authority to grant the remedy Plaintiffs seek under 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. § 706.

2. Venue is proper in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e) because one or more Plaintiffs resides within the Middle District of Florida.

## PARTIES

3. Plaintiff, DonnyFL, LLC ("DonnyFL") is a Florida corporation that makes airguns and sound moderators for these airguns.  Neither airguns nor moderators for airguns are classified as "firearms" or "silencers" under the NFA.

4. Plaintiff Thuan "Donny" Du ("Du") is an individual person of the age of majority and is the managing member of DonnyFL, LLC.

5. Defendant Pam Bondi is the Attorney General of the United States.  In her official capacity as Attorney General, she oversees the U.S. Department of Justice, including the Bureau of Alcohol, Tobacco, Firearms, and Explosives.  She also has statutory authority to prescribe rules and regulations concerning firearms. *See* 18 U.S.C. § 926; 26 U.S.C. § 7801(a)(2); 28 U.S.C. § 599A(c)(1); Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

6. Defendant U.S. Department of Justice ("DOJ") is a federal executive branch agency within the federal government of the United States. DOJ is headquartered at 950 Pennsylvania Avenue NW, Washington, D.C. 20530.  DOJ is charged with enforcing federal firearms

laws.

7. Defendant Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") is a component agency of DOJ responsible for enforcing federal criminal laws and regulating the firearms and explosives industries, including the registration and regulation of "silencers."  *See* 28 U.S.C. § 599A(b)(1); 28 C.F.R. § 0.130. ATF has limited authority under the Gun Control Act and National Firearms Act to promulgate certain regulations. See 18 U.S.C. § 926(a); 26 U.S.C. § 7805(a). ATF is headquartered at 99 New York Avenue NE, Washington, D.C. 20226. Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

8. Defendant Kash Patel is the Acting Director of the ATF.  In his official capacity as Director of the ATF, he oversees the ATF and its enforcement and regulatory activities.

## FACTS

9. DonnyFL has been in business for about eight years and has manufactured airgun accessories. As modern airguns can be surprisingly loud when fired unsuppressed, DonnyFL also sold the "Ronin" model airgun moderators to its customers.  Many other manufacturers still do manufacture airgun moderators of similar build as the Ronin, and this is a common accessory on the airgun accessory market.

10. The DonnyFL Ronin is much different than firearm suppressors. The Ronin is designed exclusively for airgun use and is unsuitable for firearms.

11. Unlike firearms, airguns produce sound primarily through mechanical actions and air pressure, which the DonnyFL Ronin is designed specifically to address.

12. The Ronin's construction clearly delineates the DonnyFL product line from firearm suppressors.  The DonnyFL Ronin and similar models utilize build materials like felt and rubber o-rings, which are effective for the lower temperatures and pressures in airguns. These materials are not flame-retardant and cannot withstand the high temperatures and

pressures produced by firearms.

13. The internal design of DonnyFL Ronin, using felt and rubber for vibration dampening and the specific structure of the baffles, is optimized for airguns. This design is not suited to handle the intense heat and gas pressures generated by firearm use.

14. For instance, a typical .30 caliber airgun operates at around 2100 psi, significantly lower than the 35,000 psi chamber pressure of a 9mm handgun.[1] Consequently, DonnyFL moderators are not built to withstand the conditions of firearm use.

15. DonnyFL airgun moderators, including the Ronin, use a 1/2x20 UNF threading, a standard in the airgun industry and not used in popular firearms currently in production. This design choice further underscores their incompatibility with firearms.

16. Moreover, the use of an airgun suppressor in an uncommon-to-firearms thread pitch has been deemed by courts to be sufficient to show that said suppressor was not intended for firearm use, in particular, the *United States v. Crooker* case, *infra.,* which held that an airgun suppressor that could be modified via thread adapter to work on a common firearm thread pitch was not a "firearm silencer."

17. Finally, all DonnyFL moderators are clearly labeled for airgun or PCP[2] use only, indicating their intended and appropriate use.

18. In summary, the design, materials, and construction of DonnyFL airgun moderators, including the DonnyFL Ronin, are specifically tailored for airguns and are fundamentally

---

[1] Note that in the BATFE analysis of the Ronin attached as Exhibit 6, the BATFE examiner called this comparison "misleading" because a 9mm diameter bullet could not pass through the Ronin due to the baffle/end cap diameter being designed for .22 caliber bullets. On the contrary, diameter is not determinative of chamber pressure and the 9mm is a relatively low-pressure example. BATFE is well-aware that one of the most common .22-diameter calibers is the .223, used in the estimated 20 million AR-15s owned in America. This round generates 55,000 psi, which would likely destroy the DonnyFL moderator instantly. Similarly, the popular 5.7x28mm round also uses a projectile that can physically pass through a device designed for .22 caliber rounds, and it generates 50,000 psi. If anything is "misleading," it is for the BATFE to use the lowest-pressure firearm round – .22 LR with a max pressure of 24,000 psi – as a testing standard, and to extrapolate that a device which can withstand firing the lowest-pressure firearm round available must have been intended for the purpose of silencing firearms.
[2] "Pre-charged pneumatic" – a type of airgun.

different from firearm suppressors. They are neither intended for, suitable for, nor safe for use with firearms.

19. Nonetheless, on November 3, 2022, a BATFE Warning Notice was provided to DonnyFL, LLC containing the preliminary determination that DonnyFL airgun moderators are "firearm silencers" under 18 U.S.C. § 921(a)(3)(C) & (a)(25).[3]

20. As stated in the Warning Notice, the BATFE's view is that DonnyFL airgun moderators are firearm silencers because "the objective design features of these items—including expansion chambers and baffles—are effective at slowing down and cooling propellant gases, thereby reducing the report of a firearm when attached." The Warning Notice concludes that "although marketed as airgun silencers, these devices are objectively capable of withstanding the higher pressure associated with firearms," thereby rendering them firearm silencers.

21. Upon information and belief, the moderator at issue (i.e., the "DonnyFL Ronin") is turned in a 1/2x20 thread, which is not a common firearm thread pitch, such as 1/2x28 or M13.5-1LH. Indeed, the 1/2x20 thread pitch is a common standard among airgun moderator manufacturers, and DonnyFL purposely has not manufactured moderators that share a thread pitch with firearms, nor does DonnyFL make, sell, or provide adapters that would allow its moderators to be converted for use with firearms.

22. In written correspondence, undersigned counsel for DonnyFL informed the BATFE that the United States Court of Appeals for the First Circuit has already rejected the argument that an airgun moderator is a "firearm silencer" under 18 U.S.C. § 921(a)(3)(C) just because it is *capable* of functioning as a firearm silencer.[4]

---

[3] Exhibit 1.
[4] Exhibit 2.

23. Instead, in *United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010), the court opined that an airgun moderator requiring an adapter to fit a firearm is not automatically a "silencer" just because it is capable of suppressing a firearm. The court found that the question of whether the moderator is a "firearm silencer" turns on whether the defendant **intended** that the airgun moderator be used as a silencer for a firearm, not whether it is capable of such. *Id.*

24. In that case, Crooker was arrested and charged with, among other things, possession of an unregistered firearm silencer. *Id.* The silencer was actually an airgun moderator threaded in a pitch not common to firearms, like the DonnyFL moderators here. *Id.* Crooker, by his own admission, was well-aware that the moderator in his possession could function as a firearm silencer if properly adapted for a firearm. *Id.* BATFE conducted a test of the moderator and determined that – if modified with an adapter – the moderator functioned as a firearm silencer. *Id.* Thus, the BATFE concluded that Crooker's airgun suppressor was a firearm silencer. *Id.*

25. In rejecting the BATFE's argument that because the moderator was capable of functioning as a suppressor after modification (noting that soda bottles and potatoes are "capable" of firearm suppression), it was necessarily a firearm silencer, the *Crooker* court held:

"[W]here, as here, the device was created for a different use - to silence an airgun - and requires some modification or adaptation to fit a firearm, problems arise in two different dimensions: its capability for use as a silencer and, separately, the defendant's knowledge, purpose or both with respect to the device. […] [T]he statute by its terms requires something more than a potential for adaptation and knowledge of it. The statute does not refer either to capability or adaptation; it speaks of a device "for" silencing or muffling."

26. In DonnyFL's situation, DonnyFL moderators were created to moderate an airgun, not a firearm, and they require modification or adaptation to fit a firearm. As the *Crooker* court held, Sections 921(a)(3)(C) & (a)(25) require more than capability of suppressing a firearm, a potential for adaptation, and knowledge of the capability before an airgun moderator is

deemed a "firearm silencer." *Id.*

27. The *Crooker* court also opined that the *Crooker* facts meant the airgun moderator at issue did not fall within the legal definition of "firearm silencer," i.e., a "combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer," but the court held that the intent analysis for a "collection of parts" was "a gradation of purpose more rigorous" than that of a "self-sufficient device" – i.e., proving that an airgun muffler is a combination of parts intended for fabrication of a silencer requires an even greater burden than demonstrating that the muffler itself is "for a firearm". *Id.* at 97.

28. In this case, it appears that the BATFE modified the DonnyFL moderators to function on a firearm in its testing prior to issuing the warning letter to DonnyFL. Therefore, this testing does not, in and of itself, prove that DonnyFL "intended" to manufacture a silencer simply because it could be adapted to work with a firearm, per *Crooker*.

29. Undersigned counsel submitted correspondence contesting the BATFE's definition of "silencer" as it relates to DonnyFL's airgun moderators on March 10, 2023.[5]

30. It was not until November 2, 2023 that BATFE responded to this correspondence.[6]  In their November 3, 2023 response, BATFE (1) Asked DonnyFL to submit samples of its moderators for a formal determination, and; (2) Inauspiciously disagreed with DonnyFL's application of *Crooker* to these facts and instead argued that DonnyFL's circumstances were more akin to *Sig Sauer, Inc. v. Brandon,* 826 F.3d 598 (1st Cir. 2016).

31. However, both DonnyFL's case and *Crooker* can be readily distinguished from *Sig Sauer, Inc. v. Brandon,* which dealt with an individual "part" that Sig claimed to be a muzzle brake. The "muzzle brake" in *Sig Sauer* was simply an unencased monolithic baffle core admittedly

---

[5] Exhibit 2.
[6] Exhibit 3.

taken from Sig's firearm suppressors. It did not function in any way as a muzzle brake and had "design features uncharacteristic of muzzle brakes and characteristic only of the interior of silencers." *Id.* at 604.

32. It took BATFE nearly eight months to provide a two-page response. In that time, DonnyFL lost two million dollars in sales because of his voluntary compliance with the BATFE's request, while his competitors who offer similar products have not faced this same impediment. No reason was provided for such a delay.

33. BATFE received a sample of the Ronin for evaluation on December 1, 2023, along with an enclosure letter from undersigned counsel.[7]

34. After receiving no response from BATFE, on June 18, 2024, counsel for DonnyFL sent another letter to BATFE,[8] pointing out that over a year had transpired since the initial Warning Notice was issued to DonnyFL, and DonnyFL continued to experience significant financial losses due to its voluntary compliance with the BATFE's request to cease the manufacturing and sale of airgun moderators. The prolonged delay in receiving a response from the BATFE placed an undue burden on Mr. Donny Du's business, resulting in an estimated loss of at least two million dollars in sales.

35. The facts strongly suggest that BATFE, after recognizing that its initial testing with a Ruger 22/45 and an adapter was insufficient under *Crooker*, conducted an extended search for obscure firearms that could accommodate the Ronin without modification. This post hoc justification for its regulatory overreach demonstrates the arbitrary and capricious nature of its enforcement actions.

36. It was not until November 19, 2024 – nearly a year after the Ronin was submitted to BATFE

---

[7] Exhibit 4.
[8] Exhibit 5.

– for the BATFE to issue a report. There was no cause given for the BATFE taking a year to perform a simple series of tests, however, DonnyFL posits that this time was spent in an effort to circumvent the holding in *Crooker* through locating and utilizing unusual 1/2x20 threaded firearms.

37. In the BATFE's evaluation,[9] BATFE predictably attached the Ronin to a popular .22 LR handgun, the Ruger 22/45. The Ruger 22/45 is one of the most popular .22 LR handguns in the market today and is a variant of the Ruger Mark series of .22 LR pistols, perhaps the best-selling .22 LR handgun ever made.

38. However, coupling the Ruger 22/45 to the Ronin was only achievable through the use of a thread adapter, as the Ronin does not use a common thread pitch for attachment to a muzzle.

39. Almost certainly realizing that, because this was the same test BATFE used unsuccessfully in the *Crooker* case, BATFE needed to find a .22 LR with a 1/2x20 factory thread pitch.

40. BATFE needed to locate a 1/2x20 thread pitch firearm because the *Crooker* court flatly ruled that <u>using an adapter</u> to attach an airgun moderator to a Ruger .22 LR pistol does not prove that the moderator is a "firearm silencer" as defined by the NFA, even if it functions as such after use of **an adapter.**

41. Moreover, a .22 LR was needed because (1) the Ronin muzzle device uses small-diameter endcaps and baffles, meaning that larger calibers would not pass through the moderator and; (2) it is likely that the pressure generated from a centerfire cartridge would destroy the Ronin, thus, BATFE could use the lowest-pressure round possible to minimize the possibility of the Ronin being destroyed while still allowing BATFE to claim that the Ronin could suppress a "firearm."

42. Accordingly, BATFE located two relatively obscure .22 LR firearms which each have native

---

[9] Exhibit 6.

1/2x20 thread pitch. The CZ 457 Royal and the IntraTec Tec-22.

43. The CZ 457 Royal is a newer .22 LR rifle, having been introduced in 2019. It is an expensive, niche .22 bolt action rifle that has a $799 MSRP (most common, American-made .22 LR bolt action rifles can be anywhere from $399 to less than $200) and is made in the Czech Republic. It uses a cold hammer forged barrel which is an expensive process typically earmarked for match rifles which require precision or intermediate-caliber semi-automatic rifles which benefit from increased durability. The CZ 457 Royal advertises as having a 1/2x20 thread pitch and interestingly states that this is a "European standard" in its marketing materials.[10]

44. Upon information and belief, the Ronin was designed and sold prior to the release of the CZ 457 Royal. DonnyFL was not even aware of the existence of the CZ 457 Royal until the BATFE report mentioned it. BATFE's reliance on a firearm that postdates the Ronin's creation demonstrates that its classification is not based on intent but on the agency's deliberate efforts to circumvent established precedent.

45. The IntraTec Tec-22 is an unusual firearm manufactured by IntraTec out of Miami, Florida. IntraTec was formed in in 1980s after famed designer, George Kellgren, left Interdynamic USA, and his former partner, Carlos Garcia, rebranded the company as IntraTec.

46. IntraTec manufactured the Tec-22 in small numbers from 1988 until 1994.

47. IntraTec was beset by financial and legal problems, and ultimately dissolved in 2001 as a result. The Tec-22 is obscure and has not been manufactured or sold by any company since.

48. In other words, BATFE's conclusion that the Ronin was intended to be a "firearm silencer" hinges upon the Ronin being functional with the smallest common caliber firearm on two highly unusual firearms that use an uncommon 1/2x20 thread pitch.[11]

---

[10] See Exhibit 7.
[11] Note that the most common, if not universal, thread pitch for firearms in the .22-caliber range (including the aforementioned AR-15) is 1/2x28, which is not compatible with 1/2x20.

49. Also note that it was not until *after* undersigned counsel brought the *Crooker* case to BATFE's attention that it sought out 1/2x20 factory thread pitch firearms to test with the Ronin. Upon information and belief, BATFE's warning letter was based upon the use of a 1/2x28 threaded Ruger .22 LR pistol with an airgun thread adapter, as in *Crooker.*

50. And even if the DonnyFL moderators function on two highly unusual firearms without an adapter, the silencer definition nonetheless "focuses on the intended application of a silencer, not its actual demonstrated operation" and "indicates a concern for the purpose of the mechanism ... not the function." *United States v. Carter*, 465 F.3d 658, 667 (6th Cir. 2006) (per curiam).

51. Thus, evidence of intent outweighs evidence of capability.

52. Other than showing that the Ronin functions on two very uncommon firearms, BATFE has presented no evidence that DonnyFL intended for its moderators to be used as "firearm silencers."

53. Thus, BATFE's determination that DonnyFL airgun moderators are firearm silencers is incorrect under *Crooker*.

54. DonnyFL and Donny Du have been harmed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives unlawful determination that Ronins are "silencers."

**The Statutory Definition of a "Silencer"**

55. The 1934 National Firearms Act (26 U.S.C. Chapter 53) ("NFA") regulated the possession or transfer of an unregistered firearm, while also prohibiting the registration of firearms otherwise banned by law. *See* 26 U.S.C. §§ 5812(a). The National Firearms Act "imposes a registration requirement and a tax upon the manufacture and transfer of firearms."

56. In 1968, Congress passed the Gun Control Act (GCA) criminalizing possession of certain firearms for certain classes of people. *See* 18 U.S.C. § 921 *et seq.*

57. The Gun Control Act of 1968 criminalizes the illegal manufacture, transfer, and possession of firearms.

58. The definition of a "firearm" under federal law includes "any firearm muffler or firearm silencer." 18 U.S.C. § 921(a)(3)(C).

59. A silencer is defined therein at 18 U.S.C. § 921(a)(24) as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, **designed or redesigned, and intended** for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." (Emphasis added.)

60. 18 U.S.C. § 921(a)(24).[1] The National Firearms Act incorporates the Gun Control Act's definition by reference, defining the term "firearm" to include "any silencer (as defined in section 921 of Title 18, United States Code)." 26 U.S.C. § 5845(a)(7). Any device that qualifies as a "firearm silencer"—that is, "any device for silencing, muffling, or diminishing the report of a portable firearm"—is subject to extensive federal registration and taxation.

61. A device that does not so qualify can be produced, marketed, and sold free from federal restraints, subject only to state regulations.

**Defendant's Determination that the Ronin is a "Silencer" is Contrary to Law**

62. Recent legal developments further undermine the validity of Defendants' determination that the DonnyFL Ronin is a "firearm silencer" under 18 U.S.C. § 921(a)(25).

63. Historically, agencies like the Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE) have relied on Chevron deference, a doctrine established in *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984), which required courts to defer to an agency's interpretation of ambiguous statutory language if the interpretation was reasonable.

64. However, the Supreme Court overturned Chevron deference on June 30, 2023, fundamentally altering how courts review agency interpretations. The removal of Chevron deference compels this Court to independently interpret the statutory language of 18 U.S.C. § 921(a)(25) and § 5845(a)(7) without granting deference to the BATFE's determinations.

65. Without Chevron deference, the BATFE can no longer rely on its own interpretation to expand the definition of a silencer beyond the statutory text. The Court must now apply *de novo* review to determine whether the Ronin meets the strict statutory definition, without giving weight to BATFE's subjective interpretations.

66. In doing so, this Court must focus on the plain meaning of the statutory text, legislative intent, and the ordinary understanding of the terms "firearm silencer" and "intended use." This shift reinforces Plaintiffs' argument that the Ronin, designed exclusively for airgun use and incapable of safely or effectively functioning with over 99% percent of firearms in existence without modification, does not meet the statutory definition of a silencer.

67. Defendants' reliance on an expansive interpretation of statutory language to justify their determination cannot stand under this new legal standard. The statutory definition requires a device to be "for silencing, muffling, or diminishing the report of a portable firearm." The plain language of the statute—and the precedent established in *United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010)—requires an analysis of intent and suitability. Without Chevron deference, the BATFE's interpretation that mere capability constitutes intent is an overreach that fails to satisfy the statutory requirements.

68. *Crooker, supra,* rejected BATFE's reliance on capability alone, emphasizing that intent—not mere possibility—is dispositive. Here, BATFE has failed to show that DonnyFL intended its airgun moderators for firearm use, and its attempt to rely on obscure firearms post hoc cannot supply that missing intent.

69. By applying the post-Chevron framework, this Court must find that Defendants' determination lacks a basis in law and improperly expands the statutory definition of a silencer to encompass devices like the Ronin, which are demonstrably unsuitable for and not intended for firearm use.

**FIRST CAUSE OF ACTION**

**DEFENDANTS' INTERPRETATION AND ENFORCEMENT OF THE NFA AND GCA IS ARBITRARY, CAPRICIOUS, AND OTHERWISE CONTRARY TO LAW**

70. Plaintiffs repeat and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

71. Defendants' claim that the Ronin is a "silencer" is based on Defendants' interpretation that, merely because a device functions as a silencer, it is a silencer.

72. In *Crooker,* the First Circuit considered whether a silencer designed for an air gun was a firearm silencer under the GCA because it was a "device for silencing" a firearm. *Crooker* at 96–97.

73. The applicable definition includes "any device for silencing" a firearm, any combination of parts "intended for use" in assembling a silencer, and any part "intended only for use" in a silencer. 18 U.S.C. § 921(a)(24).

74. Although "a device for silencing" does not use the word "intended"—as the other two parts of the definition do—the First Circuit nonetheless held that the government was required to show that the defendant "had a purpose to have the device function as a firearm silencer." *Id.* at 99.

75. In reaching this determination, the court commented on the tripartite structure of the silencer definition and suggested that "it is as easy (perhaps easier) to view all three tests as gradations of purpose made more rigorous as the statute extends from a self-sufficient device to a collection of parts to a single part." *Id.* at 97.

76. Thus, the court embraced a **subjective** test when construing the silencer definition, not the **objective** test that the BATFE is operating under as it relates to the Ronin.

77. Moreover, Defendants' enforcement efforts are arbitrary and capricious as evidenced by their selective application of the law. Despite DonnyFL's voluntary compliance with BATFE's warning letter, competitors offering substantially similar products have not been subjected to enforcement actions. This disparity, coupled with Defendants' prolonged delays—resulting in substantial financial harm to Plaintiffs—illustrates a lack of reasoned decision-making and an abuse of discretion.

78. Therefore, Defendants' interpretation, and any continued efforts to enforce Defendants' interpretation, is thus arbitrary, capricious, and otherwise contrary to law.

79. Plaintiffs are entitled to declaratory relief correcting Defendants' unlawful interpretation and to injunctive relief preventing Defendants unlawfully enforcing Defendants' interpretation of the Ronin as a silencer."

## SECOND CAUSE OF ACTION

## UNCOMPENSATED TAKING OF PROPERTY WITHOUT JUST COMPENSATION UNDER THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION)

80. Plaintiff DonnyFL incorporates all preceding paragraphs as if fully set forth herein.

81. The Fifth Amendment to the U.S. Constitution provides that private property shall not "be taken for public use, without just compensation."

82. The Defendants, acting under color of federal law, have taken Plaintiff's property in the form of substantial lost revenue, inventory destruction demands, and reputational harm stemming from BATFE's unlawful classification of DonnyFL products as firearm silencers.

83. Defendants' actions, including ordering the cessation of sales, demanding inventory be surrendered or destroyed, and chilling business relationships with retailers and customers,

have caused DonnyFL to suffer at least $2 million in lost revenue and have significantly

impaired its ability to compete in the airgun industry.

84. The BATFE's enforcement action constitutes a regulatory taking because it deprives

Plaintiff of the economically beneficial use of its property without just compensation.

85. Plaintiff has no adequate remedy at law to recover these losses, as Defendants have

provided no means for compensation or reconsideration of the unlawful classification.

86. Plaintiff seeks declaratory and injunctive relief preventing Defendants from enforcing their

unlawful classification and an award of monetary damages in an amount to be proven at

trial, including lost revenue, reputational harm, and legal costs.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (APA) – ARBITRARY AND CAPRICIOUS ACTION RESULTING IN ECONOMIC LOSS

87. Plaintiff DonnyFL incorporates all preceding paragraphs as if fully set forth herein.

88. Under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), courts must set

aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law."

89. Defendants' classification of the DonnyFL Ronin as a firearm silencer was arbitrary and

capricious because:

    a. It ignores binding legal precedent (*United States v. Crooker*) that requires intent as a

       necessary element of classification;

    b. It relies on obscure firearms and post hoc justification to support a predetermined

       outcome;

    c. It selectively enforces silencer classification against DonnyFL but not against

       similarly situated competitors;

16

d.  It has caused irreparable financial harm to Plaintiff, with over $2 million in lost revenue, loss of competitive standing, and potential inventory destruction without any meaningful recourse.

90. Defendants' actions have deprived Plaintiff of its right to fair notice, due process, and meaningful participation in regulatory proceedings, violating the APA and the Due Process Clause of the Fifth Amendment.

91. Plaintiff seeks declaratory and injunctive relief to prevent Defendants from enforcing their unlawful classification and an award of monetary damages in an amount to be determined at trial, including lost revenue, reputational harm, and legal costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant all appropriate relief, including:

a.      The issuance of a temporary restraining order preventing Defendants from pursuing civil or criminal enforcement actions against Plaintiffs while responding to this Complaint;

b.      The issuance of a preliminary injunction, halting Defendants' enforcement of the challenged statutory interpretation that the Ronin is a silencer.

c.      A declaratory judgment, pursuant to the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202), 5. U.S.C. § 706, and/or other applicable law, that holds unlawful and sets aside ATF's action, finding that the Ronin is not a "silencer."

d.      An order permanently enjoining Defendants from enforcing, civilly or criminally, the challenged statutory interpretation or in any other way regulating the Ronin as a "silencer" under currently existing law.

e.      An order requiring that all Ronins seized by or surrendered to the Defendants be returned to their rightful owners or, if destroyed, the rightful owners be compensated for the value

of their lost property.

  f.   An award of all compensatory damages, actual damages, attorneys' fees and costs to Plaintiffs pursuant to Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), and any applicable statute or authority; and

  g.   Any other relief that this Court in its discretion deems just and proper.

          Respectfully submitted:

         _____

         **JAMES J. REEVES II (#1002812)**
         MELCHIODE MARKS KING LLC
         639 Loyola Avenue, Suite 1800
         New Orleans, Louisiana 70113
         Telephone: (504) 336-2880
         Facsimile: (504) 336-2342
         Email: jreeves@mmkfirm.com
         *Counsel for Plaintiffs,*
         *Thuan Du and DonnyFL, LLC*